# Exhibit A

## SHERIFF'S ENTRY OF SERVICE

**EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGHERTY COUNTY, GEORGIA

**STSV2020000287**

Civil Action No. ___STSV2020000287___

Date Filed ___09/11/20 03:14 PM___

JMS

SEP 11, 2020 03:14 PM

Superior Court ☐   Magistrate Court ☐
State Court ☒   Probate Court ☐
Juvenile Court ☐

Evonne S. Mull, Clerk
Dougherty County, Georgia

Georgia, **DOUGHERTY** COUNTY

Attorney's Address

WILLIAMS, SHAVONNE

111 East Main Street
DOTHAN, Alabama 36301

_____
Plaintiff

VS.

PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.;

Name and Address of Party to be Served.
**ALBANY AREA PRIMARY HEALTH CARE**

ELLIS, JEFFREY; KWARTENG, FRANCIS; JONES,

**204 North Westover Blvd.**

_____
Defendant

**Albany, Georgia 31707**

_____
Garnishee

SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant_____personally with a copy
of the within action and summons.

**NOTORIOUS**

I have this day served the defendant_____by leaving a
☐ copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:
age, about _____years; weight _____pounds; height, about _____feet and _____inches, domiciled at the residence of
defendant.

**CORPORATION**

Served the defendant _____a corporation
☐ by leaving a copy of the within action and summons with_____
in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the
door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of the
same in the United States Mail, first class in an envelope property address to the defendant(s) at the address shown in said
summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the
place stated in the summons.

**NON EST**

☐ Diligent search made and defendant_____
not to be found in the jurisdiction of this court.

This ___11___ day of ___Sept___, 20__20__ _____

_____
Deputy

**STATE COURT OF DOUGHERTY COUNTY**
**STATE OF GEORGIA**

EFILED IN OFFICE
CLERK OF STATE COURT
DOUGHERTY COUNTY, GEORGIA

**STSV2020000287**
**JMS**
**SEP 11, 2020 03:14 PM**

Evonne S. Mull, Clerk
Dougherty County, Georgia

CIVIL ACTION NUMBER  STSV2020000287

WILLIAMS, SHAVONNE

**PLAINTIFF**

VS.

PHOEBE PUTNEY MEMORIAL HOSPITAL,
INC.
ELLIS, JEFFREY
KWARTENG, FRANCIS
JONES, ANTHONY G.
ALBANY AREA PRIMARY HEALTH CARE

**DEFENDANTS**

**SUMMONS**

TO: ALBANY AREA PRIMARY HEALTH CARE

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Angela Mason**

**111 East Main Street**
**DOTHAN, Alabama 36301**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If this action pertains to a Protective Order, the Answer is to be filed and served on or before the scheduled hearing date attached. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 11th day of September, 2020.**

Clerk of State Court

Evonne S. Mull, Clerk
Dougherty County, Georgia

**EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGHERTY COUNTY, GEORGIA
**STSV2020000287**
JMS
AUG 27, 2020 05:29 PM

Evonne S. Mull, Clerk
Dougherty County, Georgia

## IN THE STATE COURT OF DOUGHERTY COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| SHAVONNE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION** |
| | ) | |
| PHOEBE PUTNEY MEMORIAL | ) | **FILE NO.** |
| HOSPITAL, INC. d/b/a PHOEBE | ) | |
| PUTNEY MEMORIAL HOSPITAL; | ) | |
| ALBANY AREA PRIMARY HEALTH | ) | |
| CARE, INC. d/b/a ALBANY AREA | ) | |
| PRIMARY HEALTH CARE; JEFFREY | ) | |
| ELLIS; FRANCIS KWARTENG; | ) | |
| ANTHONY G. JONES; and DOE | ) | |
| DEFENDANTS 1-25, | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

COMES NOW, Shavonne Williams, Plaintiff in the above styled action, and hereby file

this Complaint for Damages against Defendants Phoebe Putney Memorial Hospital, Inc., Albany

Area Primary Health Care, Inc., Jeffrey Ellis, Francis Kwarteng, Anthony Jones, and Doe

Defendants 1-25 , relating to the gross negligence, wantonness and/or recklessness of each

defendant resulting in the retention of and damages caused by a foreign object, a surgical sponge,

in the Plaintiff's body while under the care of the Defendants. In support thereof, Plaintiff shows

this Honorable Court the following:

1

**Parties, Jurisdiction, and Venue**

1.

Plaintiff Shavonne Williams (hereafter "Ms. Williams" or "Plaintiff") is, and was at all times material to this lawsuit, an individual and resident of Albany, Doughterty County, Georgia.

2.

Defendant Phoebe Putney Memorial Hospital, Inc. d/b/a Phoebe Putney Memorial Hospital (hereafter "PPMH" or "Hospital") is a domestic Georgia corporation whose principal place of business is 417 Third Avenue, Albany, Georgia (Dougherty County). Defendant PPMH is subject to the jurisdiction of this Court. Unless service is acknowledged, Defendant PPMH may be served with process through its registered agent, Dawn G. Benson, at 417 Third Avenue, Albany, Georgia, 31701-1943.

3.

Defendant Albany Area Primary Health Care (hereafter "AAPHC") is a domestic Georgia corporation whose principal place of business is 404 North Westover Blvd., Albany, Georgia, 31701. Defendant AAPHC is subject to the jurisdiction of this Court. Unless service is acknowledged, Defendant AAPHC may be served with process through its registered agent, Shelley Spires at 404 North Westover Blvd., Albany, Georgia, 31701.

4.

Defendant Dr. Jeffery Ellis, M.D., is an individual whose principal place of business is 417 Third Avenue, Albany, Georgia, 31701 in Dougherty County.  Unless service is acknowledged, Defendant Ellis may be served at his principal place of business or 298 Carrington Circle, Thomasville, GA 31757.

2

5.

Defendant Dr. Francis Kwarteng M.D., is an individual whose principal place of business is 417 Third Avenue, Albany, Georgia, 31701 in Dougherty County. Unless service is acknowledged, Defendant Kwarteng may be served at his principal place of business or 181 Grand Island Drive, Albany, GA 31707.

6.

Defendant Anthony G. Jones M.D., is an individual whose principal place of business is 417 Third Avenue, Albany, Georgia, 31701 in Dougherty County. Unless service is acknowledged, Defendant Jones may be served at his principal place of business or 2890 Vinings Way SE Suite 389, Atlanta, GA 30339.

7.

Defendants John/Jane Doe(s) 1-5 are those yet unidentified individuals and/or entities who may be liable, in whole or part, for the damages alleged herein in any way related to or responsible for the actions, management, training and/or supervising of Dr. Ellis and/or any individual or entity responsible for the care of Ms. Williams or the delivery of her child. Once served with process, John/Jane Doe(s) 1-5 are subject to the jurisdiction and venue of this Court.

8.

Defendants John/Jane Doe(s) 6-10 are those yet unidentified individuals and/or entities who may be liable, in whole or part, for the damages alleged herein in any way related to or responsible for the actions, management, training and/or supervising of Dr. Anthony G. Jones and or any individual or entity responsible for radiological care or services provided to Ms. Williams. Once served with process, John/Jane Doe(s) 6-10 are subject to the jurisdiction and venue of this Court.

3

9.

Defendants John/Jane Doe(s) 11-15 are those yet unidentified individuals and/or entities who may be liable, in whole or part, for the damages alleged herein in any way related to the nurse or administrative care directly or indirectly responsible for the surveillance, counting, and/or securing of any medical device used over the course of the cesarean section and deliver at issue, including but not limited to lap sponges utilized over the course of Caesarean Section ("C-section") procedures. Once served with process, John/Jane Doe(s) 11-15 are subject to the jurisdiction and venue of this Court.

10.

Defendants John/Jane Doe(s) 16-20 are those yet unidentified individuals and/or entities who may be liable, in whole or part, for the damages alleged herein in any way related to or responsible for the actions, management, training, supervision and/or administration of PPMH and/or AAPHC. Once served with process, John/Jane Doe(s) 16-20 are subject to the jurisdiction and venue of this Court.

11.

Defendants John/Jane Doe(s) 20-25 are those yet unidentified individuals and/or entities who may be liable, in whole or part, for the damages alleged herein. Once served with process, John/Jane Doe(s) 20-25 are subject to the jurisdiction and venue of this Court.

**Factual Background**

12.

On or about August 28, 2020, Ms. Williams, who was pregnant at the time, was admitted to PPMH for concerns related to her own condition as well as that of her unborn child.  Four

4

days later, while still admitted to PPMH, Ms. Williams underwent a cesarean section (C-section) and unplanned hysterectomy. During this surgical procedure, Defendants used and left a surgical sponge inside Ms. Williams' body, constituting retention of a foreign medical device and obvious breaches in the standard of care. Defendants' breaches in the standard of care has resulted in lasting and catastrophic damages to Ms. Williams. C-section

13.

A medical professional inadvertently leaving a foreign object in a patient is never acceptable. In fact, retention of a foreign object in a patient's body following a surgical procedure is commonly referred to as a "Never Event" by physicians, hospital regulators and quality assurance professionals. It should never happen.

14.

Due to the gross negligence, wantonness and/or recklessness of each Defendant, a "never event" occurred when the Defendants inserted a surgical sponge in Ms. Williams' body and then left and/or failed to remove the sponge from her body prior to completing this surgical procedure and/or returning Ms. Williams to recovery. As a result, for more than a year after her C-section and hysterectomy, Ms. Williams retained a foreign object that had been placed in her body while under the Defendants' care.

15.

At all times material to this lawsuit, all above named and Doe Defendants provided medical care and treatment, through physicians, nurses, medical assistants, nursing care, medical care and actions of other healthcare providers, to Ms. Williams and owed her a duty to provide her with reasonable healthcare specific to the circumstances of her presentation.

5

16.

At all times material to this lawsuit, Defendant PPMH provided medical care and

treatment to Ms. Williams, through physicians, nurses, medical assistants, nursing care, medical

care and actions of other healthcare providers acting incident to and within the course and scope

of their employment and/or agency with Defendant PPMH.

17.

At all times material hereto, Defendant PPMH held itself out to Ms. Williams, its

patients, and members of the general public as able to provide competent and comprehensive

healthcare services to its patients through its physicians, nurses, medical assistants, appropriate

healthcare administration and other healthcare personnel.

18.

At all times material to this lawsuit, Defendant AAPHC provided medical care and

treatment to Ms. Williams through physicians, nurses, medical assistants, nursing care, medical

care and actions of other healthcare providers acting incident to and within the course and scope

of their employment and/or agency with Defendant PPMH.

19.

At all times material hereto, Defendant AAPHC held itself out to Ms. Williams, its

patients, and members of the general public as able to furnish comprehensive and competent

healthcare services to its patients through its physicians, nurses, medical assistants, appropriate

healthcare administration and other healthcare personnel.

6

20.

At all times material hereto, Ms. Williams relied upon the reputation of Defendants PPMH and AAPHC as being competent to furnish comprehensive and reasonable healthcare through its physicians, nurses, medical assistants, and other healthcare personnel.

21.

At all times material hereto, the nurses, medical assistants, and technicians caring for Ms. Williams during her hospital stay commencing on or about August 28, 2018, were employees or agents of Defendants PPMH and AAPHC as well as any of the individual defendants acting as employees or agents of Defendants PPMH and/or AAPHC.

22.

Any and all persons or entities charged or tasked with surveillance, counting, and securing of surgical tools and instruments during operative procedures, including but not limited to lap and/or surgical sponges used over the course of cesarean section procedures, were provided by Defendant PPMH and were employees/agents of Defendants PPMH and AAPHC as well any of the individual defendants acting as employees or agents of Defendants PPMH and/or AAPHC.

23.

On or about August 28, 2020, Ms. Williams presented at PPMH for concerns related to her and her unborn child's condition. She was as patient known to the Defendants and was in, approximately, her 32nd week of pregnancy.

7

24.

Ms. Williams presented in the Emergency Department at Defendant PPMH and was

admitted from that department to the hospital and eventually transferred to the labor and delivery

department.

25.

On her fourth day at PPMH, Ms. Williams underwent an unplanned C-section, the

delivery of her first child, an unplanned hysterectomy, and the enclosure of a surgical lap sponge

inside of her body, where it would remain for nearly a year, all due to the negligence, gross

negligence, wantonness, and/or recklessness of the Defendants.

26.

Ms. Williams was a patient known to Defendants PPMH and AAPHC and they provided

Dr. Ellis, an obstetrician and gynecologist, to treat Ms. Williams.  Defendant Dr. Ellis was, at all

times pertinent to this action, an employee and/or agent of Defendant PPMH, Defendant

AAPHC, and Defendant Dr. Kwarteng.

27.

Defendants PPMH, AAPHM, and Dr. Kwarteng are directly responsible for the actions of

their employees, surrogates, agents and/or assigned personnel, including but not limited to

Defendant Dr. Ellis and/or all members of the observation floor nurses/nursing surrogates and

labor and deliver team.

28.

The condition of Ms. Williams and her unborn son were placed in grave jeopardy by the

lack of appropriate medical and nursing monitoring and care following her admission to PPMH.

8

The failure to appropriately monitor and provide reasonable intervention for Ms. Williams and her son constitute deviations from the applicable medical and nursing standards of care.

29.

The failure to provide appropriate medical and nursing monitoring and care to Ms. Williams, following her admission to PPMH, directly and proximately caused the need for the C-section that Defendants eventually initiated on September 1, 2018, as well as the unplanned hysterectomy carried out at that same time.[1]

30.

The surgical technique utilized by Dr. Ellis in performing the C-section caused a significant amount of bleeding over the course of the procedure, constituting a deviation from the applicable standards of care.

31.

Defendants PPMH, Dr. Ellis, and the other members of the delivery team were unprepared to respond to the bleeding encountered over the course of the procedure. This lack of preparation constitutes a deviation from the applicable nursing and medical standards of care. This deviation directly and proximately caused significant damage to Ms. Williams even before the defendants left a lap sponge in her body following the procedure. These actions and omissions constitute deviations from the applicable standards of care.

32.

As a direct and proximate result of the surgical technique and lack of preparation and appropriate response to an evolving presentation by both Dr. Ellis and the rest of the delivery team, Dr. Ellis decided to perform an unplanned hysterectomy. This decision, directly and

---

[1] While the C-section and birth were initiated and completed on September 1, 2018, the medical record documenting the event records the "Date of Procedure" as "09/02/18."

proximately caused by the negligence, gross negligence, wantonness, and/or recklessness of the Defendants, constitutes a deviation from the applicable standards of care.

33.

Over the course of the C-section and hysterectomy, Defendants utilized medical equipment commonly referred to as "lap sponges" to address some of the bleeding they encountered.

34.

Generally made of cotton, a lap sponge is an absorbent device/instrument with an incorporated radiopaque strip or seam that ensures a lap sponge is never enclosed in a patient's body following its use during the course of a procedure.   The radiopaque strip or seam works as a marker so that any remaining sponges are readily identifiable on an X-ray.

35.

The Defendants failed to keep an accurate count of how many lap sponges were used over the course of the procedure and/or failed to secure the known number of lap sponges utilized over the course of the procedure. This failure constitutes a deviation from the applicable hospital, nursing and medical standards of care.

36.

Though the medical records contain inconsistent and conflicting information, it appears that *no instrument count* was performed before or after the procedure nor was an instrument count maintained throughout the procedure. , This failure constitutes a deviation from the applicable hospital, nursing and medical standards of care.

10

deviation from the applicable hospital, nursing and medical standards of care as well as fraud that Ms. Williams reasonably relied upon to her detriment.

42.

Defendant Jones and Defendant Ellis, and/or their agents, failed to adequately communicate concerning and/or address the presence of the foreign object left inside Ms. Williams' body. These actions and omissions constitute a deviation from the applicable hospital, nursing and medical standards of care.

43.

Each of the breaches of the standard of care alleged in this Complaint, whether or not the phrase "breach in the standard of care" appears directly referencing the action or omission in question, directly and proximately caused Ms. Williams' catastrophic and lasting damages, including physical, emotional, and economic injuries.

44.

Ms. Williams is entitled to recover from Defendants reasonable compensatory damages in an amount in excess of $10,000.00 to be determined by a fair and impartial jury for all damages she suffered, including physical, emotional, and economic injuries.

45.

It is a clear deviation from the applicable standards of care to allow for the retention of a radiopaque, clearly identifiable lap sponge in Ms. Williams' body. If the applicable standards of care had been appropriately followed, this device would not, and in fact could not, have been left inside Ms. Williams' body.

12

46.

In support of her Complaint, Ms. Williams has attached the affidavit of Cynthia Brown, M.D., an expert who is competent to testify as to the standard of care required of a medical doctor OB/GYN, members of a delivery/C-section team, including but not limited to nurses and patient technicians, and a hospital engaged in the practice of labor and delivery. Dr. Brown has identified at least one negligent act or omission and a factual basis for the same. Please see the attached hereto as Exhibit 1. This affidavit is not intended to be a substitute for Dr. Brown's full and complete opinion(s) but is filed for the purpose of compliance with OCGA § 9-11-9.1.

In support of her Complaint, Ms. Williams has attached the affidavit of Jorgelina Roach, R.N., an expert who is competent to testify as to the standard of care required of a members of a delivery/C-section team, including but not limited to nurses and patient technicians and a hospital engaged in the practice of labor and delivery. Ms. Roach has identified at least one negligent act or omission and a factual basis for the same. Please see the attached hereto as Exhibit 2. This affidavit is not intended to be a substitute for Ms. Roach's full and complete opinion(s) but is filed for the purpose of compliance with OCGA § 9-11-9.1.

47.

In support of her Complaint, Ms. Williams has attached the affidavit of Dr. Bruce Distill, M.D., an expert who is competent to testify as to the standard of care required of a medical doctor radiologist and other members of the patient care team charged with communicating radiological findings intra-operatively as well as the standard of care required of a hospital engaged in the practice of radiological diagnostic techniques. Dr. Distill has identified at least one negligent act or omission and a factual basis for the same. Please see the attached hereto as

13

Exhibit 3. This affidavit is not intended to be a substitute for Dr. Distill's full and complete

opinion(s) but is filed for the purpose of compliance with OCGA § 9-11-9.1.

48.

While Plaintiff has attached affidavits as required by OCGA § 9-11-9.1, Plaintiff alleges

that additional expert affidavits could not be prepared because of time constraints due to the lack

of good faith response from the Defendants in providing certain portions of Ms. Williams'

medical records as well as the current COVID-19 pandemic and its impact on the medical

community at large, including medical and nursing practitioners who would offer expert

testimony. Plaintiff's counsel has a good faith basis for the understanding that the statute of

limitations will or may run as to certain acts or negligence within ten days of the filing of this

Complaint as contemplated by OCGA § 9-11-9.1.

### Count I
### Gross Negligence, Wantonness, and/or Recklessness
### of PPMH and Doe Defendants 11-25

49.

Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs in

this Complaint.

50.

At all times material to this lawsuit, Defendants PPMH and Does 11-20 provided medical

care and treatment to Ms. Williams through physicians, nurses, medical assistants, nursing care,

medical care and actions of other healthcare providers and owed a duty to provide Ms. Williams

with reasonable healthcare specific to the circumstances of her presentation.

14

51.

At all times material to this lawsuit, Defendants PPMH and Does 11-20 provided medical

care and treatment to Ms. Williams through physicians, nurses, medical assistants, nursing care,

medical care and actions of other healthcare providers acting incident to and within the course

and scope of their employment and/or agency with Defendant PPMH and/or Does 11-20.

52.

At all times material hereto, Defendants PPMH held itself out to Ms. Williams, its

patients, and members of the general public as able to furnish comprehensive and competent

healthcare services to its patients through its physicians, nurses, medical assistants, appropriate

healthcare administration and other healthcare personnel.

53.

At all times material hereto, Ms. Williams relied upon the reputation of Defendant

AAPHC as a healthcare provider competent to furnish comprehensive and reasonable healthcare

through its physicians, nurses, medical assistants, and other healthcare personnel.

54.

At all times material hereto, the nurses, medical assistants, and technicians caring for Ms.

Williams during her hospital stay commencing on or about August 28, 2018, were employees or

agents of Defendants PPMH and Does 11-20 as well as any of the individual defendants acting

as employees or agents of Defendants PPMH and Does 11-20.

55.

Any and all persons or entities charged or tasked with surveillance, counting, and

securing of surgical tools and instruments during operative procedures, including but not limited

to lap sponges used over the course of surgical procedures, were provided by Defendants PPMH

15

and/or Does 11-20 and were employees/agents of Defendants PPMH and/or Does 11-20 as well

as any of the individual defendants acting as employees or agents of Defendants PPMH,

AAPHC, and/or Does 11-20.

56.

The actions and omissions of Defendants PPMH and/or Does 11-20 constitute deviations

from the applicable standards of care at issue in each of the following ways:

a) Failure to create appropriate and/or necessary policies and procedures regarding safe
   and sterile performance of cesarean sections and other surgical procedures, proper
   surveillance, counting, and securing of surgical tools and instruments during
   operative procedures, including but not limited to lap sponges used over the course of
   cesarean section and other surgical procedures, the training of nursing and
   administrative staff/agents of the hospital regarding the importance to accurately
   surveil, count, and secure medical devices over the course of surgical procedures, and
   accurate and necessary communication between members of the care team involved
   in cesarean section and other surgical procedures;

b) Failure to train employees and/or agents, including but not limited to nursing and
   administrative staff of the hospital, and/or to enforce hospital policies and procedures
   regarding safe and sterile performance of cesarean sections and other surgical
   procedures, proper surveillance, counting, and securing of surgical tools and
   instruments during operative procedures, including but not limited to lap sponges
   used over the course of cesarean section and other surgical procedures, and accurate
   and necessary communication between members of the care team involved in
   cesarean section and other surgical procedures;

16

c) Failure to appropriately train, supervise, credential, and/or privilege members of the patient care team, including but not limited to physicians and nurses) tasked with monitoring expecting mothers, providing care over the course of labor and delivery, including but not limited to radiological services, and/or providing care over the course of cesarean section and other surgical procedures; and

d) Failure of its employees, staff and/or agent, including but not limited to physicians, nurses, and/or nursing surrogates, to provide reasonable and necessary medical treatment and care, in accordance with a reasonable standard of care, and to perform the following accurately:  monitor Ms. Williams and her unborn child following her admission to PPMH, surveil and/or count the medical devices utilized over the course of the cesarean section and other surgical procedures which in turn allowed for the retention of a medical device, to follow existing policies and procedures, as well as best practices, to reduce the risk of retention of medical devices over the course of cesarean sections or other surgical procedures, to advocate for patient's safety before, during, and after the cesarean section procedure and other surgical procedures at issue, to communicate with the rest of the medical care team regarding the possibility of a retained medical device, and to report and respond to the a possibility of a retained instrument following an operative procedure.

57.

Defendants PPMH and/or Does 11-20 are also vicariously liable for the actions and omissions of Defendant Doctors Ellis and Jones as well as Defendant AAPHC.

17

58.

Each alleged deviation from the standard of care amounts to a gross deviation from the required standards of care (amounting to, at least, gross negligence). Each deviation from the applicable standard of care did directly and proximately caused Ms. Williams catastrophic and lasting damages, including physical, emotional, and economic injuries.

**Count II**
**Gross Negligence, Wantonness, and/or Recklessness of Defendants**
**Ellis, Kwarteng, AAPHC and Doe Defendants 1-5, 21-25**

59.

Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs in this Complaint. At all times material to this lawsuit, Defendants Ellis, Kwarteng, AAPHC and Doe Defendants 1-5 and 21-25 provided medical care and treatment to Ms. Williams directly and/or through physician services, nurses, medical assistants, nursing care, medical care and/or actions of other healthcare providers and owed a duty to provide Ms. Williams with reasonable healthcare specific to the circumstances of her presentation.

60.

At all times material to this lawsuit, Defendants Ellis, Kwarteng, AAPHC and Doe Defendants 1-5 and 21-25 were acting incident to and within the course and scope of their employment and/or agency with Defendants Ellis, Kwarteng, AAPHC and Doe Defendants 1-5 and 21-25 when providing medical care and treatment to Ms. Williams directly and/or through physician services, nurses, medical assistants, nursing care, medical care and actions of other healthcare providers.

61.

The actions and omissions of Defendants Ellis, Kwarteng, AAPHC and Doe Defendants 1-5 and 21-25 constitute deviations from the applicable standards of care at issue in each of the following ways:

a) Failure to attend to and manage the labor and delivery process appropriately for Ms. Williams during her hospitalization;

b) Failure to utilize appropriate surgical technique while performing a C-section, hysterectomy or other surgical procedure, including but not limited to nature and character of the incisions/dissection attempted and the lack of preparation and/or inappropriate response to bleeding and/or hemorrhaging;

c) Failure to prepare the operating space and care team appropriately for possible complications, including but not limited to the lack of preparation to address complications, including but not limited to bleeding and/or hemorrhaging;

d) Failure to properly use medical devices and techniques utilized over the course of the surgical procedures at issue, including but not limited to the failure to control the sanctity of the surgical site and/or failure to surveil, count, and/or secure any medical device used over the course of the surgical procedure--i.e. allowing for the retention of a foreign object(s);

e) Failure to manage and direct the care team regarding the use of medical devices utilized over the course of the surgical procedures at issue, including but not limited to the failure to control the sanctity of the surgical site and/or failure to surveil, count, and/or secure any medical device used over the course of the surgical procedure--i.e. allowing for the retention of a foreign object(s);

f) Failure to investigate adequately and appropriately the potential of retaining a medical device, including but not limited to a lap sponge, over the course of the surgical procedures at issue; and

Failure to document or record facts properly, accurately and honestly within the medical record—i.e., representing that "Sponge needle and instrument counts were correct" despite radiological studies evidencing at least one retained sponge.

62.

Each alleged deviation from the standard of care amounts to a gross deviation from the required standards of care (amounting to, at least, gross negligence).

63.

Each deviation from the applicable standard of care did directly and proximately cause Ms. Williams' catastrophic and lasting damages, including physical, emotional, and economic injuries.

**Count III**
**Gross Negligence, Wantonness, and/or Recklessness of Defendants**
**Jones, PPMH and Doe Defendants 6-10, 16-25**

64.

Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs in this Complaint.

65.

At all times material to this lawsuit, Defendants Jones, PPMH and Doe Defendants 6-10 and 16-25 provided medical care and treatment to Ms. Williams directly and/or through physician services, nurses, medical assistants, nursing care, medical care and actions of other

20

healthcare providers and owed a duty to provide Ms. Williams with reasonable healthcare specific to the circumstances of her presentation.

66.

At all times material to this lawsuit, Defendants Jones, PPMH and Doe Defendants 6-10 and 16-25 provided medical care and treatment to Ms. Williams directly and through physician services, nurses, medical assistants, nursing care, medical care and actions of other healthcare providers acting incident to and within the course and scope of their employment and/or agency with Defendants Jones, PPMH and Doe Defendants 6-10 and 16-25.

67.

The actions and omissions of Defendants Jones, PPMH and Doe Defendants 6-10 and 16-25 constitute deviations from the applicable standards of care at issue in each of the following ways:

a) The misidentification of anatomy and/or retained medical devices in reading, interpreting, and/or communicating the results of a series of X-rays performed on Ms. Williams in the operating suite on or about September 1, 2018;

b) Failure to communicate appropriately and accurately the findings of a series of X-rays performed on Ms. Williams in the operating suite on or about September 1, 2018, to the patient care team physically present in the operating room; and

c) Failure to document the medical records appropriately and accurately with regard to interpretation of the X-ray taken on or about September 1, 2018, falsely concluding that there was "no evidence of retained sponges" or that the "instrument count correlates with" the X-ray at issue.

21

68.

Each alleged deviation from the standard of care amounts to a gross deviation from the required standards of care (amounting to, at least, gross negligence). Each deviation from the applicable standard of care did directly and proximately cause Ms. Williams' catastrophic and lasting damages, including physical, emotional, and economic injuries.

### Damages

69.

Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs in this Complaint.

70.

As a direct and proximate result of the Defendants' individual and collective conduct, Ms. Williams is entitled to recover from Defendants all reasonable compensatory damages in an amount in excess of $10,000.00 to be determined by a fair and impartial jury for all damages she suffered, including physical, emotional, and economic injuries.

WHEREFORE, Plaintiff demands a trial by jury and judgment against the Defendants as follows:

a)  Compensatory damages in an amount in excess of $10,000 to be determined by a fair and impartial jury;

b)  All costs of this action; and

c)  Such other and further relief as the Court deems just and proper.

Dated this the 27th day of August, 2020.

**THE COCHRAN FIRM-DOTHAN, PC**

_/s/ Angela J. Mason_
Angela J. Mason, Attorney for Plaintiff
Georgia Bar No. 118498
111 E. Main Street
P.O. Box 927
Dothan, AL 36301
334-673-1555 telephone
334-699-7229 facsimile
angelamason@cochranfirm.com

**JURY DEMAND**

Plaintiffs hereby demand a trial by struck jury of all issues in this action.

_/s/Angela J. Mason_
Angela J. Mason

23

# Exhibit 1

**EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGHERTY COUNTY, GEORGIA

**STSV2020000287**
**JMS**
**AUG 27, 2020 05:29 PM**

Evonne S. Mull, Clerk
Dougherty County, Georgia

IN THE STATE COURT OF DOUGHERTY COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| SHAVONE WILLIAMS | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION |
| | ) | |
| PHOEBE PUTNEY MEMORIAL | ) | FILE NO. |
| HOSPITAL, INC. d/b/a PHOEBE | ) | |
| PUTNEY MEMORIAL HOSPITAL; | ) | |
| ALBANY AREA PRIMARY HEALTH | ) | |
| CARE, INC. d/b/a ALBANY AREA | ) | |
| PRIMARY HEALTH CARE; JEFFREY | ) | |
| ELLIS; FRANCIS KWARTENG; | ) | |
| ANTHONY G. JONES; and DOE | ) | |
| DEFENDANTS 1-25 | ) | |
| | ) | |
|     Defendants | ) | |

<u>**Affidavit of Dr. Cynthia Brown, M.D.**</u>

STATE OF ALABAMA
COUNTY OF JEFFERSON

    Personally appeared before me, the undersigned officer duly authorized by law to

administer oaths, Dr. Cynthia Brown, M.D., Affiant, who after being duly sworn says and

deposes under oath as follows:

1.

    My name is Cynthia Brown. I am over the age of eighteen (18) years, am suffering from

no legal disabilities, and am competent to make this Affidavit. I understand that this Affidavit is

to be used by the attorneys representing Ms. Shavonne Williams in a medical malpractice action

against certain medical providers in the state of Georgia arising from medical care that she

1

received at Phoebe Putney Memorial Hospital (hereafter "PPMH") in Albany, Georgia in August and September of 2018.

2.

I am a licensed and practicing medical doctor, OB/GYN, in the state of Alabama who has worked in that capacity, continuously board certified since 1998. I have practiced obstetrics for my entire professional career and to this day regularly perform, oversee, supervise and consult in the labor and delivery of my patients and the patients of other doctors. That practice routinely includes the delivery of children via cesarean section, planned and unplanned/emergent, and includes the supervision, training, and management of nurses and other healthcare professionals involved in the labor and delivery process. I am familiar with the medical, nursing, and hospital standards of care related to the labor and delivery process, including but not limited to cesarean section and other post-delivery surgical procedures (such as hysterectomies). Attached to this affidavit is a copy of my Curriculum Vitae summarizing my educational and professional background.

3.

I make this affidavit based on my own personal knowledge as a licensed and trained medical doctor and upon review of the records provided to me in connection with the care and treatment rendered to Ms. Shavonne Williams at PPMH.

4.

I have personal knowledge of the standards of care and skill generally required of medical doctors and other healthcare providers, that I routinely supervise, involved in the labor and delivery process as well as the standards required of healthcare facilities, such as PPMH, under the same and similar circumstances as those presented by Ms. Williams when she was a

2

patient at PPMH in August and September of 2018. Specifically, I have knowledge of the standards of care and skill required of a doctor, nurse and healthcare facility when monitoring and responding to the labor and delivery process as well as the standards of care and skill required to safely effectuate a cesarean section, planned and unplanned/emergent. I personally perform cesarean sections, planned and unplanned/emergent, and directly supervise other healthcare providers in their roles over the course of the same, as part of my routine practice as a physician.

5.

Based on my review of the medical records and facts at issue, it is my opinion that the PPMH staff, physicians, nurses, patient care technicians, and any other staff, that performed the cesarean section on Ms. Williams on September 1, 2018, failed to exercise the degree of skill and care ordinarily required of physicians, nurses and other primary care providers under like conditions and similar circumstances, and that it was foreseeable that Ms. Williams would sustain serious harm as a result of the failure to comply with the standards of care at issue.

6.

The standards of care for physicians, nurses, patient care technicians, and any other staff, involved in a cesarean section and/or other post-delivery surgical procedures require the surveillance, counting, and/or securing of any and all medical device used over the course of the cesarean section and and/or other post-delivery surgical procedures. The providers in question breached the standard of care when they allowed a medical device (at least one lap sponge) to be retained inside Ms. Williams' body, unaddressed. Failure to surveil, count, and secure the medical devices used over the course of this procedure and allowing one or more to remain

inside the patient's body is a gross deviation from the required standards of care (amounting to, at least, gross negligence).

7.

The standard of care requires all healthcare providers involved in a cesarean section and/or other post-delivery surgical procedures to ensure that the instruments used over the course of the procedure are surveilled, counted, and secured. The standard of care requires a physician to confirm the instrument count at to the completion of the procedure, prior to the patient leaving the operating room. The standard of care requires that the hospital maintain policies and procedures consistent with the medical and nursing standards of care associated with cesarean section and/or post-delivery surgical procedures. The standard of care requires that the physician and other primary healthcare providers accurately communicate concerning the presence of or possibility of any retained instrument or object. The standard of care requires further investigation if there is any question concerning the presence of a foreign object or surgical instrument in the patient's body. Any provider's deviation from these standards is, in my opinion, a gross deviation from the required standards of care at issue (amounting to, at least, gross negligence).

8.

These standards unquestionably apply to any medical providers involved in the cesarean section and/or hysterectomy of Ms. Williams and include Doctor Jeffery Ellis, PPMH, Albany Area Primary Health Care, and any other healthcare provider working with, allowing, or directing the work of the same. This list of providers is not intended to be an exclusive list of the individuals or entities that the standards of care discussed apply to.

4

9.

While this affidavit is a fair and accurate statement of my opinion, it is not intended to be a substitute for each and every opinion that I hold related to the care at issue or the deviations from the standards of care that apply to this matter. I reserve the right to supplement my opinions with the availability of additional information as this matter moves forward.

10.

I make this Affidavit under oath, after having been duly sworn, on the basis of my professional training, education, and experience. This affidavit is executed for the purpose of being attached to and used in support of the lawsuit to be filed on behalf of Ms. Shavonne Williams against the aforementioned medical providers and any persons or entities that may be responsible for the negligence or other misconduct of the providers, and for all other purposes allowed by law.

FURTHER AFFIANT SAITH NOT.

_____
Dr. Cynthia Brown, M.D.

Sword to and subscribed before me
This _20_ day of _August_ , 2020.

_____
Notary Public
My commission expires: _09/20/2023_



5

**Cynthia Harlin Brown, MD**
OB/GYN Health Center
Medical West
985 Ninth Avenue SW
Bessemer AL 35022
205.481.7750

| | |
|---|---|
| **Professional Experience** | **OBGYN Heath Center, UAB Medical West  8/2019**<br>**Obstetrician and Gynecologist**<br><br>**Sparks and Favor, PC,  7/1996-8/2019**<br>**Obstetrician and Gynecologist** |
| **Education** | **Obstetrics and Gynecology Resident 7/1992-6/1996**<br>**Johns Hopkin Hospital**<br>**Baltimore, Maryland**<br><br>**MD, cum laude, 8/1987-5/1992**<br>**University of Alabama at Birmingham**<br>**Birmingham, Alabama**<br>**Alpha Omega Alpha**<br>**Merit Scholarship Recipient**<br>**Alumnae Award for Leadership and Community Service**<br><br>**BS, Biology, Cum Laude, 8/1983-5/1987**<br>**Sophie Newcomb College, Tulane University**<br>**New Orleans, Louisiana**<br>**Phi Beta Kappa**<br>**Dean's Honor Scholarship** |
| **Professional Memberships** | **American College of OBGYN, Fellow**<br>**American Board of OBGYN, Certified**<br>**Medical Association of the State of Alabama**<br>**Brookwood Medical Center, Active Staff** |
| **Professional Distinctions** | **Hattie Butler Award for Community Service 2019**<br>**Best Doctors in America 2006-2019**<br>**Al.com and Birmingham Best Gynecologist and Best Obstetrician ---Finalist/Winner Multiple years**<br>**Jefferson County Medical Society Board of Directors 2014-2016**<br>**Jefferson County Medical Society Ethics Committee**<br>**Caduceus  Club, Board of Directors** |
| **References** | **Upon Request** |

# Exhibit 2

✻ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGHERTY COUNTY, GEORGIA

**STSV2020000287**
JMS
**AUG 27, 2020 05:29 PM**

Evonne S. Mull, Clerk
Dougherty County, Georgia

# IN THE STATE COURT OF DOUGHERTY COUNTY
## STATE OF GEORGIA

SHAVONE WILLIAMS        )
                     )
    Plaintiff,           )
                     )
vs.                 )     CIVIL ACTION
                     )
PHOEBE PUTNEY MEMORIAL    )    FILE NO.
HOSPITAL, INC. d/b/a PHOEBE    )
PUTNEY MEMORIAL HOSPITAL;    )
ALBANY AREA PRIMARY HEALTH    )
CARE, INC. d/b/a ALBANY AREA    )
PRIMARY HEALTH CARE; JEFFREY    )
ELLIS; FRANCIS KWARTENG;    )
ANTHONY G. JONES; and DOE    )
DEFENDANTS 1-25             )
                     )
    Defendants          )

## Affidavit of Jorgelina Roach, RN

STATE OF Georgia
COUNTY OF _Fulton_

    Personally appeared before me, the undersigned officer duly authorized by law to administer oaths, Jorgelina Roach, RN, Affiant, who after being duly sworn says and deposes under oath as follows:

1.

    My name is Jorgelina Roach. I am over the age of eighteen (18) years, am suffering from no legal disabilities, and am competent to make this Affidavit. I understand that this

Affidavit is to be used by the attorneys representing Ms. Shavonne Williams in a medical malpractice action against certain medical providers in the state of Georgia arising from medical care that she received at Phoebe Putney Memorial Hospital (hereafter "PPMH") in Albany, Georgia in August and September of 2018.

2.

I am a licensed and practicing registered nurse (RN), in the state of Georgia who has worked in that capacity continuously since 2010 . I have practiced obstetrics/labor and delivery as well as post-partum for nearly ten years and I regularly perform nursing duties/care in the labor and delivery department. The nursing care I provide routinely includes the delivery of children via cesarean section, planned and unplanned/emergent, and includes the supervision, training, and management of nurses and other healthcare professionals involved in the labor and delivery process. I am familiar with the nursing, and hospital standards of care related to the labor and delivery process, including but not limited to cesarean section and other post-delivery surgical procedures. Attached to this affidavit is a copy of my Curriculum Vitae summarizing my educational and professional background.

3.

I make this affidavit based on my own personal knowledge as a licensed and trained registered nurse and upon review of the records provided to me in connection with the care and treatment rendered to Ms. Shavonne Williams at PPMH.

4.

I have personal knowledge of the standards of care and skill generally required of nurses and other healthcare providers engaged in nursing assistance and care augmentation (such as medical assistants, "scrub technicians," and certified nursing assistants), involved in the labor and delivery process as well as the standards required of healthcare facilities, such as PPMH, under the same and similar circumstances as those presented by Ms. Williams when she was a patient at PPMH in August and September of 2018. Specifically, I have knowledge of the standards of care and skill required of nurses, other healthcare providers engaged in nursing assistance and care augmentation and healthcare facility when monitoring and responding to the labor and delivery process as well as the standards of care and skill required to safely effectuate a cesarean section, planned and

unplanned/emergent. I provide nursing care for cesarean section procedures, planned and unplanned/emergent, and directly supervise other healthcare providers in their roles over the course of the same, as part of my routine practice as a nurse.

5.

Based on my review of the medical records and facts at issue, it is my opinion that the PPMH staff, nurses, patient care technicians, and any other staff, that performed the cesarean section on Ms. Williams on September 1, 2018 failed to exercise the degree of skill and care ordinarily required of nurses and other primary care providers under like conditions and similar circumstances, and that it was foreseeable that Ms. Williams would sustain serious harm as a result of the failure to comply with the standards of care at issue.

6.

The standards of care for nurses, patient care technicians, and any other staff, involved in a cesarean section and/or other post-delivery surgical procedures require the surveillance, counting, and/or securing of any and all medical devices used over the course of the cesarean section and delivery at issue. Failure to surveil, count, and secure the medical devices used over the course of this procedure and allowing one or more to remain inside the patient's body is a gross deviation from the required standards of care (amounting to, at least, gross negligence).

7.

The standard of care requires all healthcare providers involved in a cesarean section and/or hysterectomy to ensure that the instruments used over the course of the procedure are surveilled, counted, and secured. The standard of care requires that the hospital maintain policies and procedures consistent with the nursing standards of care associated with cesarean section and/or post-delivery surgical procedures. The standard of care requires that the patient care team accurately communicate concerning the presence of or possibility of any retained instrument or object. The standard of care requires further investigation and documentation if there is any question concerning the presence of a foreign object or surgical instrument in the patient's body. Any provider's deviation from these standards is, in my opinion, a gross deviation from the required standards of care at issue (amounting to, at least, gross negligence).

8.

These standards unquestionably apply to any medical providers involved in the cesarean section and/or hysterectomy of Ms. Williams and include PPMH, Albany Area Primary Health Care, any nurse and any other healthcare provider working with, allowing, or directing the work of the same. This list of providers is not intended to be an exclusive list of the individuals or entities that the standards of care discussed apply to.

9.

While this affidavit is a fair and accurate statement of my opinion, it is not intended to be a substitute for each and every opinion that I hold related to the care at issue or the deviations from the standards of care that apply to this care.

10.

I make this Affidavit under oath, after having been duly sworn, on the basis of my professional training, education, and experience. This affidavit is executed for the purpose of being attached to and used in support of the lawsuit to be filed on behalf of Ms. Shavonne Williams against the aforementioned medical providers and any persons or entities that may be responsible for the negligence or other misconduct of the provider, and for all other purposes allowed by law.

_____          8/26/2020

JORGELINA ROACH, RNC

**State of Georgia**
**County of Fulton, ss:**
On this day, personally appeared before me

_Jorgelina Roach_

To me known to the person(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she signed the same in his/her voluntary act and deed, for the uses and purposes therein mentioned.

Witness my hand and official seal hereto affixed

This __26__ day of __August__ 20 __20__

_____
Notary Public in and for the State of Georgia.

My commission expires __2/11/24__

D. GROSSMAN
NOTARY
EXPIRES
GEORGIA
FEBRUARY 11, 2024
PUBLIC
COBB COUNTY

# Jorgelina Roach, RNC

155 Stayman Dr. Roswell, GA 30075
Cell: 770.540.2368 E-mail: jopiagrest@hotmail.com

---

## SUMMARY

---

Dedicated, motivated and professional licensed obstetrics nurse. Over eight years of experience as a Labor & Delivery nurse in clinical setting. Proficient in both Spanish and English.

---

## EDUCATION

---

**Georgia Perimeter College, Dunwoody, GA**
Associate of Science in Nursing – May 2010

**Hocking College, Nelsonville, OH – IBAHRS, Bs. As; Argentina**
Associate in Hospitality Management – March 2000

---

## LICENSES & CERTIFICATIONS

---

**State of Georgia, RN** - Active
**NCC RNC-OB certified – Active**
**AWHONN Advanced Fetal monitoring certified-Active**
**NRP-Active**
**American Heart Association Health Care Provider ACLS-** Current

---

## WORK EXPERIENCE

---

**Emory Decatur Hospital,** Decatur, GA ▪ May 2010 – present
**Labor & Delivery Nurse**

**Emory Johns Creek Hospital,** Johns Creek, GA ▪ July 2015 – present
**Labor & Delivery Nurse**

---

## CLINICALS

---

**Wesley Woods Geriatric Hospital – Medical Surgical unit**
**Saint Joseph Hospital of Atlanta – Medical Surgical unit**
**Children's Healthcare of Atlanta – Pediatric GI unit**
**Wesley Woods Geriatric Hospital – Psychiatric unit**
**Gwinnett Medical Center – L&D, Nursery and post partum units**
**Emory University Hospital Midtown – Unit 31 Medical surgical**
**Emory University Hospital Midtown – Outpatient PACU**

---

## VOLUNTEER ACTIVITIES

---

**LUMEN, Bs. As., Argentina .** March, 1998 – March, 2001
**Reading service for visually impaired citizens in the community**

**EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGHERTY COUNTY, GEORGIA

**STSV2020000287**
**JMS**
**AUG 27, 2020 05:29 PM**

Evonne S. Mull, Clerk
Dougherty County, Georgia

# Exhibit 3

### IN THE STATE COURT OF DOUGHERTY COUNTY
### STATE OF GEORGIA

SHAVONE WILLIAMS     )
           )
  **Plaintiff,**      )
           )
**vs.**           )   CIVIL ACTION
           )
PHOEBE PUTNEY MEMORIAL  )   FILE NO.
HOSPITAL, INC. d/b/a PHOEBE   )
PUTNEY MEMORIAL HOSPITAL;  )
ALBANY AREA PRIMARY HEALTH )
CARE, INC. d/b/a ALBANY AREA  )
PRIMARY HEALTH CARE; JEFFREY )
ELLIS; FRANCIS KWARTENG;   )
ANTHONY G. JONES; and DOE   )
DEFENDANTS 1-25      )
           )
  **Defendants**      )

### Affidavit of Dr. Bruce Distell, M.D.

STATE OF NORTH CAROLINA
COUNTY OF _____

  Personally appeared before me, the undersigned officer duly authorized by law to

administer oaths, Dr. Dr. Bruce Distell, M.D., Affiant, who after being duly sworn says and

deposes under oath as follows:

1.

  My name is Bruce Distell. I am over the age of eighteen (18) years, am suffering from no

legal disabilities, and am competent to make this Affidavit. I understand that this Affidavit is to

be used by the attorneys representing Ms. Shavonne Williams in a medical malpractice action

against certain medical providers in the state of Georgia arising from medical care that she

received at Phoebe Putney Memorial Hospital (hereafter "PPMH") in Albany, Georgia in August and September of 2018.

2.

I am a licensed and practicing medical doctor, Radiologist, in the state of North Carolina who has worked in that capacity, continuously board certified since 1991. My practice routinely includes the review and interpretation of radiographic studies, including X-rays, and the communication of my findings to other healthcare professionals and lay people, both in writing and orally. I am familiar with the medical and hospital standards of care related to the performing, interpretation, and communication of findings relative to radiographic studies. Attached to this affidavit is a copy of my Curriculum Vitae summarizing my educational and professional background.

3.

I make this affidavit based on my own personal knowledge as a licensed and trained medical doctor and upon review of the records provided to me in connection with the care and treatment rendered to Ms. Shavonne Williams at PPMH. In forming my opinions I have also been asked to make the following assumptions: 1) that the radiologist or another staff member/healthcare provider at the direction of the radiologist or the radiology department relayed certain findings regarding the September 1, 2018, X-ray to the operating room or operating department and 2) that radiology made or communicated a representation to the operating room or operating department that there was "no evidence of retained sponges or instruments" with respect to the September 1, 2018, X-ray at issue.

4.

I have personal knowledge of the standards of care and skill generally required of medical doctors and other healthcare providers, that I routinely supervise, involved in the labor and delivery process as well as the standards required of healthcare facilities, such as PPMH, under the same and similar circumstances as those presented by Ms. Williams when she was a patient at PPMH in August and September of 2018. Specifically, I have knowledge of the standards of care and skill required of a doctor, nurse and healthcare facility when performing, interpretation, and communication of findings of an X-ray study as well as the standards of care and skill required to safely effectively communicate with an operative suite concerning the presence or possible presence of a retained surgical instrument or lap sponge. I utilize this knowledge as part of my routine practice as a medical doctor, radiologist.

5.

Based on my review of the medical records, assumptions that I have been asked to make, and facts at issue, it is my opinion that the PPMH staff, physicians, nurses, patient care technicians, and any other staff, that were responsible for the taking, interpretation, and/or communication of the findings of the September 1, 2018, X-ray in the operative suite at PPMH failed to exercise the degree of skill and care ordinarily required of physicians, nurses and other primary care providers under like conditions and similar circumstances, and that it was foreseeable that Ms. Williams would sustain serious harm as a result of the failure to comply with the standards of care at issue, namely the retention of a lap sponge used over the course of the procedure.

6.

The standards of care for physicians, nurses, patient care technicians, and any other staff, involved in the taking, interpretation, and/or communication of the findings of an X-ray require that foreign objects be identified and their presence accurately communicated to the healthcare providers in the operating room. The failure to appropriately communicate the findings of a series of X-rays performed in the operating suite on September 1, 2018, to the patient care team physically present in the operating room is a deviation from the standard of care. Failure to appropriately detect a foreign body and relay accurately relay the presence of that foreign body to the operating room is a gross deviation from the required standards of care (amounting to, at least, gross negligence).

7.

While this affidavit is a fair and accurate statement of my opinion, it is not intended to be a substitute for each and every opinion that I hold related to the care at issue or the deviations from the standards of care that apply to this matter. I reserve the right to supplement my opinions with the availability of additional information as this matter moves forward.

10.

I make this Affidavit under oath, after having been duly sworn, on the basis of my professional training, education, and experience. This affidavit is executed for the purpose of being attached to and used in support of the lawsuit to be filed on behalf of Ms. Shavonne Williams against the aforementioned medical providers and any persons or entities that may be responsible for the negligence or other misconduct of the providers, and for all other purposes allowed by law.

providers, and for all other purposes allowed by law.

FURTHER AFFIANT SAITH NOT.


_____

Dr. Bruce Distell, M.D.


Sword to and subscribed before me

This 25th day of August, 2020.


Notary Public

My commission expires: 10 / 8 / 2023

# CURRICULUM VITAE
# Bruce Michael Distell, M.D.

**PERSONAL:**

**Home:**              139 Ellerslie Drive
                       Fayetteville, North Carolina 28303
                       (910) 860-5426
                       (910) 987-7373 Cell
                       (910) 860-5675 Fax

**Date of Birth:**     September 23, 1960
**Place of Birth:**    Wynnewood, Pennsylvania

**Employment:**        Valley Radiology
                       3186 Village Drive, 2nd Floor
                       Fayetteville, North Carolina 28304
                       7/98 to present

**Current Position:**  Staff Radiologist
                       Chief of Orthopaedic Imaging Services
                       Cape Fear Valley Health Systems
                       Past VR President, VP Business Development

**Current Staff Priviledges:** 1. Cape Fear Valley Medical Center - Fayetteville, NC
                       2. Highsmith-Rainey Hospital - Fayetteville, NC
                       3. Bladen County Hospital – Elizabethtown, NC
                       4. Columbus Regional Healthcare – Whiteville, NC
                       5. Hoke Hospital – Raeford, NC
                       6. Betsy Johnson Memorial Hospital – Dunn, NC
                       7. Central Harnett Hospital – Lillington, NC
                       8. Valley Regional Imaging – Fayetteville, NC

**Current Clinical Appointment:**  Assistant Professor of Internal Medicine
                       Campbell School of Osteopathic Medicine

Bruce M. Distell, M.D.
Page 2

## EDUCATION:

College:
Muhlenberg College
Allentown, Pennsylvania
Bachelor of Science Degree
Honors: Summa Cum Laude and Phi Beta Kappa
1978 - 1982

Prof. School:
University of Pennsylvania
School of Medicine
Philadelphia, Pennsylvania
Doctor of Medicine
Honors: Alpha Omega Alpha Medical Honor Society
1982 - 1986

Internship:
Abington Memorial Hospital
Abington, Pennsylvania
Internal Medicine
1986 - 1987

Residency:
Duke University Medical Center
Durham, North Carolina
Diagnostic Radiology
1987 - 1991

Fellowships: Duke University Medical Center
Durham, North Carolina
1. Spine Imaging - 10/90 to 12/90
2. Abdominal Imaging (CT/UltrasoundIMRI) - 1/91 to 6/91
3. Orthopaedic Imaging -7/91 to 6/92

Bruce M. Distell, M.D.
Page 3

MEDICAL
LICENSURE:            North Carolina, Florida

CERTIFICATION:       American Board of Radiology, 06/03/91

MEDICAL
SOCIETIES:
                     American College of Radiology
                     North Carolina Chapter-ACR
                     North Carolina Medical Association

PUBLICATIONS:        DISTELL B, Hertzberg B, Bowie J. Spontaneous
                     resolution of a cystic neck mass in a fetus with
                     normal karyotype. AJR 1989;153:380-382.

                     Weiner D, DISTELL B, Studenski S, Martinez S,
                     Lomasney L, Bongiomi D. Does radiographic
                     osteoarthritis correlate with flexibility of the lumbar
                     spine? J Am Geriatric Society 1994; Mar;42(3): 257-263.

                     Williams J, Roberts L, DISTELL B, Simel D. Diagnosing
                     sinusitis by X-ray: Is a single Waters view adequate? J
                     Gen intern Med 1992; Sept-Oct;7(5):481 -485.
                     Hertzberg B, Kliewer M, Hertzberg M, DISTELL B.
                     Epididymal Leiomyoma: Sonographic Features. J
                     Ultrasound Med 1996;15:797-79.

PRESENTATIONS:

                     Orthopaedic Trauma, Metabolic Bone Disease, Bone
                     Tumors, Arthropathies. DUKE UNIVERSITY
                     PHYSICIAN ASSISTANT PROGRAM Lecture series,
                     1987-1992.

                     MRI in Orthopaedics. RALEIGH ORTHOPAEDIC
                     SOCIETY, May 1992.

                     Advances in Orthopaedic MRI. BROWARD
                     ORTHOPAEDIC SOCIETY, October 1992.

Bruce M. Distell, M.D.
Page 4


PRESENTATIONS (cont.):

Manpower in Medicine; Healthcare Trends in the 90's.
Guest Lecturer, FLORIDA ATLANTIC UNIVERSITY
1995, 1996 Lecture Series


MRI Evaluation of Various Joints, Guest Lecturer, UNC-.
CHAPEL HILL SCHOOL OF MEDICINE, DEPT.
OF RADIOLOGY, Radiology Residents, January -
December 1999


MRI Evaluation of the Meniscus and Articular
Cartilage in Sports Injuries of the Knee. NORTH
CAROLINA CHAPTER OF THE AMERICAN COLLEGE
OF RADIOLOGY, ANNUAL MEETING, May 2000.


Emergency MRI of the Extremities. NORTH CAROLINA
RADIOLOGICAL SOCIETY Fall Meeting, October 2005.


Tumor Board Radiology Presenter, CAPE FEAR
VALLEY HEALTH SYSTEMS, 1998-present.


Qu.O.T.E. Program. Established Quality Outcomes
Through Education (Qu.O.T.E.). Lecture series
presented to Cumberland County medical practitioners,
Methodist University P.A. program, Campbell University
P.A. program, 2012 -present.